UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:20-cv-23391-COOKE/GOODMAN

ADT LLC, *et al.*,

    Plaintiffs,

v.

VIVINT SMART HOME, INC., *et al.*,

    Defendants.
_____/

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Defendants Vivint Smart Home, Inc. f/k/a Mosaic Acquisition Corp. and Legacy Vivint Smart Home, Inc. f/k/a Vivint Smart Home, Inc. (together, "Vivint"), through the undersigned counsel, hereby respectfully submit this Reply Memorandum in Support of its Motion to Dismiss Counts III and IV of the First Amended Complaint ("FAC") filed by Plaintiffs, ADT LLC and The ADT Security Corporation (together, "ADT").

## INTRODUCTION

ADT's Response fails to salvage Count III and Count IV of its FAC. As set forth below, it misapplies the Rule 9(g) pleading standard for special damages as to Count III, and it fails to overcome its own allegations that present a facially deficient claim for Count IV, that can and should be disposed of on a Rule 12(b)(6) pleading standard.

## ARGUMENT

**I.   COUNT III SHOULD BE DISMISSED.**

First and foremost, ADT acknowledges that it must plead special damages as an essential element of its trade slander claim (Resp. at p. 2), and that its claim is subject to the pleading standard for special damages in Rule 9(g). (Resp. at p. 3.) ADT insists, however, that Rule 9(g) has no independent purpose and requires only that ADT satisfy the generic "notice" pleading standard under Rule 8(a). ADT is wrong, as explained below.

1

ADT first mischaracterizes the Motion as advocating to apply Rule 9(b) to special damages. (Resp. at p. 3.) Nowhere in the Motion is 9(b) uttered, though, to be clear, it is correct that Rule 9(g) imposes a similar "particularity" or "specificity" heightened pleading standard for special damages. Vivint cited ample authorities explaining the level of detail a plaintiff must provide—including identification of "realized loss" with respect to specific customers and a pecuniary computation—none of which ADT provides in the FAC. (*See* Motion at pp. 4-7.) ADT does not acknowledge any of these authorities. It makes a general, unsupported assertion that "the cases cited by Vivint each stand for nothing more than the unremarkable proposition that special damages are subject to Rule 8's notice-pleading standard." (Resp. at p. 4) (no supporting citations or explanation.) This is simply not true. These cases reinforce that special damages require a plaintiff to show a "realized loss" and plead it commensurately under the Rule 9(g) specificity standard. (*See, e.g., id.*)

The one authority the Response purports to distinguish does not help ADT's position. Vivint cited *Advisors Excel, L.L.C. v. Scranton*[1] to support its preceding statement that, "[t]o succeed on [a trade slander] claim, a plaintiff must plead special damages." (Motion at p. 4.) ADT fusses over the fact that *Advisors Excel* did not discuss the Rule 9(g) particularity/specificity standard. ADT overlooks the authorities couching this citation, which confirm the heightened pleading standard. (Motion at p. 4, citing Rule 9(g) specificity standard and *Landsman, supra*[2]; *see also* Motion at pp. 4-16, citing additional cases applying a heightened pleading standard.)[3] It is telling that ADT sidesteps *all* of these authorities. ADT's silence does not diminish their application to its pleading obligations.

---

[1] No. 14-60558-CIV, 2014 WL 12543802, at *8 (S.D. Fla. Sept. 15, 2014).

[2] To expand on this citation in the Motion, the *Landsman* court precluded a plaintiff from seeking special damages in the form of "past wage loss, future wage loss, future wage earning capacity, future medical expenses and loss of future household services because they were not properly plead in accordance with Rule 9(g)[]." *Id.* at *3. The *Landsman* opinion reiterated the "**heightened pleading requirement** of Rule 9(g)." *Id.* (Emphasis added).

[3] While the Motion focused on Florida courts, the Rule 9(g) standard is uniformly established in federal court. *See Smith v. Clinton*, 886 F.3d 122, 128 (D.C. Cir. 2018) (plaintiff did not plead special damages under Rule 9(g) where the complaint "merely contains a boilerplate recitation, unaccompanied by any factual detail, that '[a]s a direct and proximate result of Defendant Clinton's statements, [Smith and Woods] have suffered pecuniary damage, as well as injury to reputation, impairment to standing in their community, personal humiliation,

ADT's confusion on the applicable pleading standard appears to stem from its misapplication of *Leavitt v. Cole*, which both sides cite in their briefs.[4] ADT claims that *Leavitt* only requires a plaintiff to allege the "types" of special damages it seeks. (Resp. at p. 3.) The *Leavitt* court addressed at length the parameters of notice required by Rule 9(g) and ultimately concluded, ***in that case***, the plaintiff need only provide notice under Rule 8. ADT's reliance on *Leavitt* is misplaced for several reasons:

First, *Leavitt* has since been rejected by the same District to the extent it purported to equate Rule 9(g) with Rule 8. In *Nat'l Numismatic Certification, LLC v. eBay, Inc.*,[5]—an authority cited by Vivint to explain the Rule 9(g) standard yet ignored in ADT's Response—the court dismissed a trade libel claim[6] for failure to plead special damages, even though the other libel elements had been sufficiently alleged. *Id*. at *19. It unequivocally confirmed that in trade libel cases, "[c]oncerning the issue of pleading, [Fed. R. Civ. P. 9] states that '[i]f an item of special damage is claimed, it must be specifically stated.'" *Id*. The court described the "interaction" between "Rule 9(b) and the requirement of proving special damages in trade libel cases" as stated by federal courts:

> [E]ven under the liberal federal rules of pleading, it is necessary for the plaintiff to allege *either* the loss of particular customers by name, *or* a general diminution in its business, and extrinsic facts showing that such special damages were the

---

pain and suffering, and emotional distress'"); *Browning v. Clinton*, 292 F.3d 235, 245 (D.C. Cir. 2002) (to plead special damages in suit for disparagement of property, plaintiff had to "identify[] either the ***particular customers*** whose business ha[d] been lost or facts showing an established business and amount of sales before and after disparaging publication, along with evidence of causation") (emphasis added); *Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262, 270 (7th Cir. 1983) (special damage not adequately pled where complaint only generally alleged decrease to plaintiff's sales and danger to value of plaintiff's advertising, which was not sufficient to plead actual, realized pecuniary injury and therefore not specifically alleged).

[4] Vivint cited *Leavitt* to explain the difference between the requirement to plead special damages for slander *per quod* and injurious falsehood allegations, as opposed to slander *per se*. (Motion at p. 7.) ADT does not dispute that it must plead special damages, so Vivint will not repeat that argument.

[5] No. 6:08-cv-42-ORL-19JK, 2008 WL 2704404, at *20 (M.D. Fla. July 8, 2008).

[6] The claim was for conspiracy to commit trade libel, but the court's analysis centered on whether the allegations sufficiently stated the "underlying tort of trade libel." *Id*. at *18.

> natural and direct result of the false publication. If the plaintiff desires to predicate its right to recover damages upon general loss of custom, it should allege facts showing an established business, the amount of sales for a substantial period preceding the publication, and [the] amount of sales subsequent to the publication, facts showing that such loss in sales were the natural and probable result of such publication, and facts showing the plaintiff could not allege the names of particular customers who withdrew or withheld their custom.

*Id*. at * 19 (quoting *KBT Corp., Inc. v. Cerdian Corp.*, 966 F. Supp. 369 (E.D. Pa. 1997)). (Emphasis in original) (other internal citations omitted).[7]

Like ADT, the plaintiff in *Nat'l Numismatic* sought to avoid Rule 9(g) by citing *Leavitt*. *See id*. at *20. The court swiftly rejected this argument because, "Florida law requires a trade libel plaintiff to prove special damages *as part of his or her claim*" (*id*. at *20), whereas *Leavitt* had viewed Rule 9(g) as limited to "giving proper notice of *certain types of damages*." *Id*. (All emphases added). Moreover, "[e]ven if *Leavitt* correctly describes the purpose[8] behind Rule

---

[7] This heightened pleading standard is appropriate at the pleading stage because special damages are only available if there is already a *realized* loss. *See id*. (special damages for trade libel require a "pecuniary loss that has been realized or liquidated, as in the case of specific lost sales . . . In doing so, the plaintiff must establish more than general pecuniary harm") (internal citations and quotations omitted).

[8] The *Leavitt* court admitted, "[t]o be sure, [its holding] is a fairly narrow reading of Rule 9(g) . . ." but appeared to disfavor applying Rule 9(g) in favor of the Rule 26 initial disclosure requirements. 291 F. Supp. 2d at 1344, n. 6. The *Nat'l Numismatic* court rejected these ruminations as unsupported:

> *Leavitt* did not actually cite to any authority discussing the purpose of Rule 9(g), and the commentary accompanying Rule 9 contains no discussion of subsection (g). However, at least one treatise has stated the following in reference to Rule 9(g): "In the second class of cases [including trade libel], the existence of special damages is an *essential ingredient* of the plaintiff's claim for relief; in other words, as a matter of substantive law recovery is impossible without demonstrating that the plaintiff sustained such damages. To some degree, therefore, **Rule 9(g) demands more by way of a statement of this aspect of the claim than is required by Rule 8(a)(2)**. This special damage requirement most often exists in cases of defamation, disparagement of property, and several other so-called "disfavored causes of action."

(quoting 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1310 (3d ed.2005)). (Emphasis added). The purpose of Rule 9(g) to plead with specificity "would

4

9(g), it is impossible to ignore that the plain language of the Rule squarely encompasses one of the elements of establishing a trade libel claim. Accordingly, **Rule 9(g) requires Plaintiffs to plead special damages with specificity**." *Id*. (Emphasis added) (dismissing claim where plaintiffs pleaded harm to their reputation, inducement of others not to do business with them, and prejudice in the conduct of their trade). "Rule 9(g) requires a greater specificity of pleading than simply alleging that statements were prejudicial to one's business and caused pecuniary harm. Plaintiffs do not meet this burden in the Amended Complaint." *Id*. at * 20. So it is here where ADT has generally alleged harm to its goodwill and reputation, lost sales and profits, and unspecified attorneys' fees. (FAC at ¶ 81.)

Second, the *Leavitt* holding is not analogous in any event. The surviving claim in *Leavitt* was based on statements damaging the reputation of an individual. (*Id*. at 1345.) There is a distinction between the reputation (and natural resulting harm) to an *individual* as opposed to the reputation of an *entity* like ADT. "Property does not have a reputation in the sense of a natural person." *Leavitt*, 291 F. Supp. 2d at 1343, n. 4 (such that "[g]enerally, property's repute is valuable only in a transactional sense" and citing *Salit* requiring a plaintiff shareholder to plead a "realized loss" of stock as opposed to a general "diminution in stock value"). ADT is an entity, unlike the party in *Leavitt*, and must plead alleged harm in the form of a transactional, "realized loss." It has not done so. ADT's allegations are more analogous to the claim *Leavitt* **dismissed**. ADT alleges that Vivint made statements impersonating itself as "acting on behalf of ADT." (Resp. at p. 1.) With respect to these type of "masquerading" allegations, *Leavitt* dismissed a similar claim since "rather than reflecting on [the counterclaimant's] reputation, [the allegation that the counterclaim defendants masqueraded as representatives of [the counterclaimant]] appears to raise an incomplete claim for fraud." *Id*. at 1346 (dismissing claim even under Rule 8(a)(2) pleading standard). *Leavitt* is not instructive for the Rule 8(a) pleading standard ADT advocates.

---

discourage baseless litigation and seems entirely consistent with trade libel's status as a 'disfavored cause of action.'" *Id*. (quoting Wright and Miller, *supra*).

Next, ADT cites authorities it contends apply a Rule 8(a) pleading standard to special damages. (*See* Resp. at pp. 3-4.) They do not. While a defamation claim is generally subject to Rule 8, if special damages are required as an essential element—as they are here—they are subject to the specificity pleading standard of Rule 9(g). *Compare* (ADT's misplaced reliance on) *Caruso v. Galencare, Inc.*, No. 8:14-CV-539-T-33AEP, 2014 WL 1796684, at *4 (M.D. Fla. May 6, 2014) (pleading standard for special damages was neither raised nor addressed by the Court; rather, the defendant argued that the plaintiff had not sufficiently identified the speaker and time frame of the alleged defamation, which allegations are subject to Rule 8 and not at issue in Vivint's Motion); *Suarez v. Sch. Bd. of Hillsborough Cty.*, No. 8:13-CV-1238-T-17MAP, 2013 WL 5653435, at *4 (M.D. Fla. Oct. 16, 2013) (pleading standard for special damages was neither raised nor addressed by the Court; moreover, the court emphasized its lenient view of the allegations because the plaintiff was *pro se*, yet still dismissed his claim under Rule 8); *Thompson v. Kindred Nursing Centers E., LLC*, 211 F. Supp. 2d 1345, 1356-57 (M.D. Fla. 2002) (on a motion to strike allegations from an existing claim, the alleged special damages were not an essential element of a trade slander claim—no slander claim was even raised; rather, they were for pre-judgment interest on medical expenses). *Thompson* does not discuss Rule 9(g) in any event. *See id.*[9]

Finally, but critical as it pertains to ADT, the Response is conspicuously silent when confronted with Judge Middlebrooks' summary dismissal of its identical trade slander claim against Vivint in 2017. *See ADT LLC v. Vivint, Inc.*, No. 17-CV-80432, 2017 WL 5640725, at *7 (S.D. Fla. Aug. 3, 2017) (noting, "ADT does not argue that its general allegations as to [its timely alleged incidents] satisfy the ***particularity*** requirement for pleading special damages" and dismissing claim without prejudice). (Emphasis added). The law has not changed. Again,

---

[9] ADT also cites two cases that it claims contained analogous allegations and survived motions to dismiss. (Resp. at 2, citing *ThermoLife Int'l LLC v. Vital Pharm. Inc.*, No. 19-CV-61380, 2020 WL 409594, at *2 (S.D. Fla. Jan. 24, 2020); and *Freda v. Ginn-LA Pine Island Ltd., LLLP*, No. 608CV691ORL35GJK, 2009 WL 10670302, at *3 (M.D. Fla. Oct. 27, 2009).) These cases are not analogous. *Thermolife* relied on *Leavitt* with respect to the pleading standard. In *Freda*, the court did not address a trade slander claim with special damages as an essential element, but rather the plaintiff's attempt to plead categories of damages, in addition to "general and statutory damages," under the Interstate Land Sales Full Disclosures Act, 15 U.S.C. §§ 1701-1720. As explained above, special damages as an essential element of trade slander are subject to a heightened pleading standard.

6

ADT did not appeal this ruling, and it did not bother to amend its claim despite being granted leave to do so, suggesting it has not suffered any "realized loss" from Vivint's alleged conduct, not then and not now. ADT's attempt to revisit well-tread ground in this Court, hoping for a different result, should be rejected.

## II.   COUNT IV SHOULD BE DISMISSED.

As a threshold matter, ADT does not dispute that it cannot seek future profits or revenue streams as a category of damages for its interference claim (*see, e.g.,* Response), so at a minimum, the Court should grant the Motion as it pertains to precluding these alleged damages. (*See* Motion at p. 10.)

As to damages ADT alleges were caused by termination of existing ADT contracts, the gist of its response is that, to the extent Vivint has not challenged the sufficiency of ADT's pleading as to three of the four essential elements (the fourth being actual damages), the fourth element should be presumed. (Resp. at p. 5.) This argument is untenable because to reach this conclusion, ADT must ignore the truth of its own allegation that third-party *customers* elected, on their own, not to pay off their ADT contract with money Vivint provided *expressly for that purpose* in order for the customer to *avoid* breaching the ADT contract. The customer's actions thereby breached the contract, and thereby proximately caused ADT's claimed damages.

Vivint's intent matters in this respect, which is distinct from its intent to solicit and secure the ADT customers' business for itself. (The latter is a recognized privilege and non-actionable, which Vivint intends to prove in discovery should this claim survive). But as to the former intent, "even if the defendant is aware of the existing business relationship, the defendant will not be liable for tortious interference with that relationship unless there is evidence that the ***defendant intended to procure a breach*** of the contract." *Chicago Title Ins. Co. v. Alday-Donalson Title Co. of Fla.*, 832 So. 2d 810, 814 (Fla. 2d DCA 2002) (internal citations omitted) (emphasis added). Thus, even taking ADT's allegations as true that Vivint acted unlawfully in soliciting the customers' business, it must also allege that Vivint intended to cause that customer to *breach their contract with ADT*. It cannot do so because its allegations also suggest that Vivint sought to *avoid a breach* by paying off the customers' ADT contract. (DE 22 at ¶ 86, FAC alleges that Vivint's "buy-out" practices consist of a "promise that Vivint will 'buy out' the remaining term by paying to the customer an amount equal to the remaining obligation on their ADT contract.")

In this regard, Vivint relied on *Farah v. Canada*, 740 So. 2d 560, 561 (Fla. 5th DCA 1999), and 45 Am.Jur.2d *Interference* § 10 (1999) for the rule that, "in an action for procuring the breach of a contract, the defendant may not be held liable where it is found that the breach ***by the party to the contract*** rather than the persuasion by the defendant was the proximate cause of the plaintiff's damage." (Emphasis added).[10] ADT seeks to distinguish *Farah* and *Palm Beach Cty. Health Care Dist. v. Prof'l Med. Educ., Inc.*, 13 So. 3d 1090 (Fla. 4th DCA 2009) as making factual determinations not appropriate on a motion to dismiss. But, here, it is axiomatic that "[w]hile an affirmative defense generally will not support a motion to dismiss, a complaint is 'subject to dismissal under Rule 12(b)(6) when its allegations—on their face—show that an affirmative defense bars recovery on the claims.'" *Olagues v. Frost*, 325 F. Supp. 3d 1315, 1318 (S.D. Fla. 2018) (quoting *Larry v. Mercer*, No. 15-12153-E, 2015 WL 9917185, at *1 (11th Cir. Nov. 17, 2015)). ADT's allegation that Vivint allegedly does, in fact, remit funds to pay off the ADT contract to avoid a breach, is a basis for dismissal at the pleading stage.

The ruling in *Clean Coal Techs., Inc. v. Leidos, Inc.*, 377 F. Supp. 3d 303, 319 (S.D.N.Y. 2019), *reconsideration denied,* No. 17 CIV. 9678 (KPF), 2019 WL 5960202 (S.D.N.Y. Nov. 13, 2019), is illustrative and persuasive.[11] In granting a motion to dismiss for failure to state a claim, the court faced a scenario similar to this case. The *Clean Coal* defendant did not challenge the plaintiff's sufficient pleading of the existence of a valid contract, the defendant's knowledge of said contract, the breach of said contract, or that damages resulted from the breach. *Id*. at 319. Instead, as Vivint argues here, the defendant argued that "[the plaintiff] fails to allege plausibly that [the defendant] either intentionally procured the breach or was the but-for cause of the breach." *Id*. The *Clean Coal* court agreed, based on allegations in the

---

[10] This rule is well-established and holds true, notwithstanding the Motion's inadvertent inclusion of *Westlake* quoting these authorities.

[11] The court addressed a tortious interference claim under New York law, which has the same elements as Florida law. *See id*. at 318 ("To demonstrate tortious interference with contract, a plaintiff must prove [i] the existence of a valid contract between the plaintiff and a third party; [ii] the defendant's knowledge of the contract; [iii] the defendant's intentional procurement of the third-party's breach of the contract without justification; [iv] actual breach of the contract; and [v] damages resulting therefrom.").

8

complaint that "makes clear that [the third party] made an independent decision to withhold the password and SD card." *Id*. (the withholding being the actual "breach"). The plaintiff alleged that the defendant had failed to provide these items directly to plaintiff and instead gave them to the third party, but "[t]here is no allegation that this refusal to provide the items was done at [the defendant's] instruction; that [the defendant] conceived of this plan; or that [the defendant] even suggested that [the third party] withhold these items." *Id*. In short, "*[t]he Court does not find that [the plaintiff] has plausibly alleged anything other than an independent decision by [the third party] to breach the [contract], which may have been eased by certain actions taken by [the defendant]. Tortious interference requires more*." *Id*. (Emphasis added).

The same analysis applies here. ADT may have suffered damage from a customer's breach. It may criticize Vivint giving funds to complete the contract to the customer rather than directly to ADT. But it also alleges that it was the *customer(s)* who failed to pay off contracts, and does not allege that Vivint conspired with the customers to essentially pay them "free" money and instruct them not to use that allocated money to pay ADT—which would be nonsensical. This claim requires more.

Based on the foregoing, ADT has not alleged any actionable actual damages. ADT's response that its claim for the special damages category of "loss of goodwill" is not held to a heightened pleading standard is addressed above with respect to ADT's unavailing position on Rule 9(g), particularly where it would remain as the sole basis to satisfy the essential element of damages. ADT has not sufficiently pleaded this element to state a claim.

## CONCLUSION

Based on the foregoing, Vivint respectfully requests that the Court dismiss Counts III and IV of the First Amended Complaint.

Respectfully submitted,

        **s/Michael N. Kreitzer**
        Michael N. Kreitzer
        Florida Bar No. 705561
        kreitzerm@gtlaw.com
        Jared R. Kessler
        Florida Bar No. 96020
        kesslerj@gtlaw.com
        **GREENBERG TRAURIG, P.A.**
        333 S.E. 2nd Avenue, Suite 4400
        Miami, Florida 33131

Telephone: (305) 579-0500

Gregory W. Herbert
Florida Bar No. 0111510
herbertg@gtlaw.com
Joshua Brown
Florida Bar No. 826391
brownjr@gtlaw.com
**GREENBERG TRAURIG, P.A.**
450 S. Orange Avenue, Suite 650
Orlando, FL 32801
Telephone No. (407) 420-1000

Matthew A. Steward
mas@clydesnow.com
*(Pro Hac Vice Motion Forthcoming)*
Shannon K. Zollinger
skz@clydesnow.com
**CLYDE SNOW & SESSIONS**
201 S. Main Street, Suite 1300
Salt Lake City, UT 84111

*Attorneys for Defendants*