UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-23391-Civ-COOKE/GOODMAN

ADT LLC, *et al.*,

    Plaintiffs,

vs.

VIVANT SMART HOME, INC., *et al.*,

    Defendants.

_____/

## ORDER DENYING MOTION TO DISMISS

**THIS MATTER** is before the Court on the Motion to Dismiss filed by Defendants Vivint Smart Home, Inc. f/k/a Mosaic Acquisition Corp. and Legacy Vivint Smart Home, Inc. f/k/a Vivint Smart Home, Inc. (ECF No. 24) (the "Motion"), filed October 27, 2020. Plaintiffs ADT, LLC and The ADT Security Corporation ("Plaintiffs") filed their response in opposition to the Motion on November 10, 2020. ECF No. 28. Defendants Vivint Smart Home, Inc. f/k/a Mosaic Acquisition Corp. and Legacy Vivint Smart Home, Inc. f/k/a Vivint Smart Home, Inc. ("Defendants") filed their reply in support of the Motion on November 17, 2020. ECF No. 29.

Having reviewed the Motion, the briefing related thereto, the record, and the relevant legal authorities, the Court finds, for the reasons discussed below, that the Motion should be denied.

### Background

Plaintiffs filed their initial complaint in this action on August 14, 2020. ECF No. 1. Then, on October 13, 2020, Plaintiffs filed a First Amended Complaint which is the operative pleading in this case. ECF No. 22. In sum, the crux of Plaintiffs' allegations are as follows:

> This case is about Vivint's false and misleading sales practices on the doorsteps and in the homes of hundreds—if not thousands—of ADT customers across the country. Through well-rehearsed sales tactics, Vivint's sales representatives have misled scores of ADT customers into believing, among other things: (1) that the Vivint agent is there to simply "update" or "upgrade" the ADT customer's equipment, when in reality he or she is switching out the ADT system for Vivint; (2) that ADT has been bought out or is going out of business

> and that Vivint is taking over ADT accounts; and (3) that Vivint is a subcontractor, installer or is otherwise affiliated with or acting on behalf of ADT. These affiliation misrepresentations allow Vivint to freeride on the goodwill of ADT, damage ADT's name, and lead ADT's customers to do business with Vivint under false pretenses, typically resulting in the ADT customer becoming bound into a multi-year contract with Vivint valued in the thousands of dollars that is impossible for the customer to extricate him or herself from once the customer has finally become aware of Vivint's deception. These practices violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and the related common law of unfair competition. ADT seeks damages to remedy its loss of numerous customers (some known, some unknown) and the disruption of thousands of others since December 20, 2017; ADT's injuries to its goodwill and reputation; ADT's lost royalties from Vivint's unauthorized use of the ADT brand; Vivint's profits from its ill-gotten gains, ADT's attorneys' fees; and punitive damages to punish and deter Vivint from continuing to engage in its intentional conduct.

ECF No 22, First Am. Compl. at ¶ 1. Plaintiffs' First Amended Complaint asserts the following causes of action: 1) Unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); 2) Common law unfair competition; 3) Trade slander/commercial disparagement; and 4) Tortious interference with advantageous business relationships.

## Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint "contain. . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While this standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The standard requires the complaint to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 543 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To provide the "grounds" for "entitle[ment] to relief," the complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* When considering a motion to dismiss, the court must accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Duty Free Ams., Inc. v. Estee Lauder Cos.*, 797 F. 3d 1248, 1262 (11th Cir. 2015) (citing *Murphy v. F.D.I.C.*, 208 F.3d 959, 962 (11th Cir. 2000)). However, this tenet is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678.

## Analysis

Defendants request that the Court dismiss, for failure to state a claim, Plaintiff's claims for trade slander/commercial disparagement (Count III) and tortious interference with advantageous business relationships (Count IV).

### I.   Plaintiffs Stated A Claim for Trade Slander/Commercial Disparagement

Defendants argue that Plaintiffs' claim for trade slander/commercial disparagement must be dismissed for failure to plead special damages with particularity. ECF No. 24 at 4-5. The Court disagrees.

This Court has recognized that "[i]n a disparagement action the plaintiff must allege and prove the following elements: (1) [a] falsehood (2) has been published, or communicated to a third person (3) when the defendant-publisher knows or reasonably should know that it will likely result in inducing others not to deal with the plaintiff and (4) in fact, the falsehood does play a material and substantial part in inducing others not to deal with the plaintiff[,] and (5) special damages are proximately caused as a result of the published falsehood." *ADT LLC v. Vivint, Inc.*, No. 17-CV-80432, 2017 WL 5640725, at *6 (S.D. Fla. Aug. 3, 2017) (quoting *Bothmann v. Harrington*, 458 So. 2d 1163, 1168 (Fla. 3d DCA 1984)). This Court has also recognized that "[i]f an item of special damage is claimed, it must be specifically stated. . . . However, Rule 9(g) [of the Federal Rules of Civil Procedure] requires no more than a specific statement that allows a defendant to prepare a responsive pleading and begin its defense." *ThermoLife Int'l LLC v. Vital Pharms. Inc.*, No. 19-CV-61380, 2020 WL 409594, at *2 (S.D. Fla. Jan. 24, 2020) (citing *Brennan v. City of Minneola, Fla.*, 723 F. Supp. 1442, 1444 (M.D. Fla. 1989)). Moreover, "[l]ost profits generally are considered special damages under Florida law." *Mancil's Tractor Serv., Inc. v. T&iK Constr.*, LLC, No. 15-80520-CIV, 2016 WL 7486707, at *2 (S.D. Fla. Mar. 3, 2016) (citing *Safeco Title Insurance Co. v. Reynolds*, 452 So. 2d 45, 48 n.5 (Fla. 2nd DCA 1984) citing *Arcade Steam Laundry v. Bass*, 159 So.2d 915 (Fla. 2d DCA 1964)).

>Here, in their trade slander/commercial disparagement claim, Plaintiffs allege:
>
>>Vivint, through its sales agents, has intentionally made false and misleading statements about ADT, and about ADT's products and services, in their sales pitches to ADT's customers as alleged herein. Vivint's false and misleading statements demean the quality of ADT's goods and services. At the time the statements were made, Vivint knew the statements to be false.  The statements are defamatory per se in that the statements suggest conduct incompatible with the lawful exercise of business. ***The statements are injurious and damage ADT in its industry and marketplace by causing ADT to lose sales, profits, and good will; suffer injury to its reputation with consumers; and incur attorney's fees***.

ECF No. 2, First Am. Compl. ¶¶ 77-81 (emphasis added). Thus, Plaintiffs specifically allege lost sales, profits, and goodwill to support their entitlement to special damages. In accordance with this Court's holding in *ThermoLife Int'l LLC v. Vital Pharms. Inc.* the Court finds that this is sufficient.

Defendants' reliance upon *Five for Ent. S.A. v. Ayala Rodriguez*, No. 11-24142-CIV, 2014 WL 12503331, at *2 (S.D. Fla. Aug. 15, 2014), *aff'd sub nom. Five For Ent. S.A. v. El Cartel Recs., Inc.*, 646 F. App'x 714 (11th Cir. 2016), to support their argument that Plaintiffs failed to plead special damages is misplaced. There, this Court after a trial determined that the plaintiffs failed to present sufficient evidence to *prove* special damages on their injurious falsehood claim. That is not the situation the Court faces here in evaluating the pleadings at the motion to dismiss stage. Likewise, Defendants' reliance upon *ADT LLC v. Vivint, Inc.*, No. 17-CV-80432, 2017 WL 5640725, at *7 (S.D. Fla. Aug. 3, 2017), is equally misplaced. There, the Court did not make a specific finding as to what is required to plead special damages. Instead, the Court only substantively addressed the arguments before it – i.e. what slander claims were barred by Florida's statute of limitations. In fact, with respect to the special damages issue the Court recognized that "ADT does not argue that its general allegations as to incidents that occurred after April 4, 2015 satisfy the particularity requirement for pleading special damages, and asks for leave to amend the Complaint, to the extent the Court determines that the 44 specific incidents pled in the Complaint are time-barred." 2017 WL 5640725, at *7. As a consequence, the Court granted ADT's request for leave to amend its complaint but did not address what allegations are necessary to support special damages. *See id.*

Lastly, the Court notes that Defendants' contention that special damages must be pled "with particularity" lacks credence and appears to conflate Rule 9(g) with Rule 9(b) of the Federal Rules of Civil Procedure. To be clear, Rule 9(g) of the Federal Rules of Civil

Procedure states, "[i]f an item of special damage is claimed, it must be specifically stated." Fed. R. Civ. P. 9(g). Meanwhile, Rule 9(b) of the Federal Rules of Civil Procedure states, "[i]n alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b) (emphasis added). Thus, in contrast to Rule 9(b), the plain language of Rule 9(g) does not require that special damages be pled with particularity. *See* Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 1311 (4th ed. 2021), *Pleading Special Damages—Level of Specificity Required* ("Most courts now take the position that allegations of special damage will be deemed sufficient for the purpose of Rule 9(g) if they are definite enough to notify the opposing party and the court of the nature of the damages and enable the preparation of a responsive pleading. A strict approach to the application of Rule 9(g) has little justification when special damages are sought simply as a supplement to the plaintiff's general damages, as long as the pleading has satisfied the rule's underlying notice function. Additionally, Rule 9(g) merely requires that special damages be 'specifically stated,' not that they be stated 'with particularity' as is required of allegations of fraud and mistake under Rule 9(b) or of denials of conditions precedent under Rule 9(c), a distinction that should be respected as being meaningful."); *see also Leavitt v. Cole*, 291 F. Supp. 2d 1338, 1344 (M.D. Fla. 2003) ("Rule (9)(b) requires that 'the circumstances constituting fraud or mistake shall be stated with particularity.' . . . Contrast that wording with Rule 9(g), that requires, '[w]hen items of special damage are claimed, they shall be specifically stated.' . . . Rule 9(g) should be read as remedy-focused—a requirement that parties specify the types of 'special damage' they seek to recover.") (internal citations and alterations omitted).

Therefore, the Court holds that Plaintiffs have sufficiently pled special damages in support of their trade slander/commercial disparagement claim.

### II. Plaintiffs' Sufficiently Allege a Claim for Tortious Interference with Advantageous Business Relationships

Next, Defendants contend that Plaintiffs claim for tortious interference with advantageous business relationships fails because: 1) Plaintiffs failed to plead damages for Defendants' alleged interference with existing business relationships; and 2) Plaintiffs failed to plead damages for Defendants' alleged interference with Plaintiffs' prospective contracts. The Court will address each of these arguments in turn below.

"Under Florida law, '[t]he elements of tortious interference with a contract or business relationship are: (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the interference.'" *Menudo Int'l, LLC v. In Miami Prod., LLC*, No. 17-21559-CIV, 2018 WL 1138300, at *3 (S.D. Fla. Mar. 2, 2018) (quoting *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 385–86 (Fla. 4th DCA 1999) citing *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985); *Procacci v. Zacco*, 402 So. 2d 425, 426 (Fla. 4th DCA 1981); and *Linafelt v. Bev, Inc.*, 662 So. 2d 986, 989 (Fla. 1st DCA 1995)). In pertinent part, the First Amended Complaint alleges as follows:

> ADT maintains valid and enforceable contracts and business relationships with its customers. Typically, ADT customers display an ADT sign outside their homes to deter potential burglars and broadcast to the outside world that the home is protected by ADT's alarm system. Vivint is knowledgeable of the contractual and business relationship between ADT and its customers. When Vivint sales agents visit the homes of these individuals, they become (or are already) aware of such relationship and contract by, among other means: the sign displayed in front of the customer's home, talking with the customer, observing the ADT equipment in the customer's home, or through prior research and intelligence conducted on the customer's address regarding existing alarm systems. Despite knowledge of the customer's contractual and business relationship with ADT, Vivint sales representatives intentionally and without valid justification interfere with such relationship using improper means, by misleading ADT's customers into believing that Vivint represents ADT, or that Vivint is affiliated with ADT, or that they are visiting at ADT's direction, or that they work for the companies that made the ADT alarm equipment installed in the customers' homes, or that ADT has otherwise blessed Vivint to work on ADT's behalf. Once Vivint's agents induces ADT customers to believe that they have an existing business relationship with ADT, Vivint's agents lead customers to sign Vivint contracts and install Vivint alarm systems, misleading ADT customers to believe that they are receiving new ADT equipment from ADT, an ADT affiliate, or an ADT successor, or that Vivint is assuming the ADT account, or that the customer has no choice but to permit the transaction to go forward if he or she wishes to continue to have operational alarm-monitoring services. Further, Vivint agents procure the breach of the ADT contract upon the promise that Vivint will "buy out" the remaining term by paying to the customer an amount equal to the remaining obligation on their ADT contract. Vivint also offers buyouts to "save" sales procured through deceptive sales conduct in an attempt to pacify the customer. The customer does not always remit such payment to ADT. Even when the

> customer does, ADT is damaged because the value of the customer's future account revenue often exceeds the contractual value of the remaining contractual term. For example, absent Vivint's improper interference, it is not uncommon for a customer with two years left on his or her ADT contract to remain a loyal and paying customer to ADT for many years beyond the remaining two-year term. This is also why Vivint wrongfully engages in such buyout practices: Vivint knows the value of an alarm account often exceeds the immediate value under the contract. Vivint's intentional and unjustifiable interference with ADT's business relationships have caused ADT to suffer irreparable harm and damages in the form of lost goodwill and lost profits. ADT is damaged by Vivint's unlawful conduct by losing revenue streams that otherwise would remain with ADT absent Vivint's "buy out" offer.

ECF No. 22, First Am. Compl. at ¶¶ 83-89.

### A. Defendants' Argument Concerning Plaintiffs' Existing Business Relationships Fails

With respect to their contentions regarding Plaintiffs' existing customers, Defendants specifically argue:

> As it pertains to an alleged ADT customer's existing contract/business relationship with ADT, the FAC alleges that Vivint's "buy-out" practices consist of a "promise that Vivint will 'buy out' the remaining term by paying to the customer an amount equal to the remaining obligation on their ADT contract." (DE 22 at ¶ 86.) In other words, in a "buy-out" scenario, Vivint supplies the customer with funds to complete their existing ADT contract without committing a breach. ADT claims that it nonetheless sustains damage from a buyout because, sometimes, "[t]he customer does not always remit such [buyout] payment to ADT." (DE 1 at ¶¶ 88.) Even taking this generalized and speculative allegation as true, in such a scenario ADT does not allege any damage caused by Vivint, but rather the intervening actions of the customer failing to remit the funds provided for that purpose. A defendant may not be held liable where it is not the proximate cause of the plaintiff's alleged damage.

ECF No. 24 at pp. 8-9. This argument fails for two reasons.

First, Defendants' argument necessarily urges the Court to look beyond the pleadings and make inferences in Defendants' favor, if not factual findings, concerning the nature of the alleged "buy outs" and who *caused* Plaintiffs' alleged damages. This the Court cannot do at the motion to dismiss stage. *See Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). On the face of the First Amended Complaint, Plaintiffs plainly allege (1) the existence of business relationships; (2) the Defendants' knowledge of those

relationships; (3) Defendants' intentional and unjustified interference with those relationships through its sales representatives; and (4) damage to Plaintiffs as a result of Defendants' interference. And that is where the Court's inquiry must end at the motion to dismiss phase. *See Duty Free Ams., Inc.*, 797 F. 3d at 1262.

The second problem with Defendants' argument is that while it solely focuses on the First Amended Complaint's allegations related to "buy outs", it ignores the preceding allegations supporting Plaintiffs' tortious interference claim. More specifically, Defendants ignore the fact that in addition to their allegations regarding the purported "buy outs" and purported failure to remit payments, Plaintiffs also allege the following:

> Vivint sales representatives intentionally and without valid justification interfere with such relationship using improper means, by misleading ADT's customers into believing that Vivint represents ADT, or that Vivint is affiliated with ADT, or that they are visiting at ADT's direction, or that they work for the companies that made the ADT alarm equipment installed in the customers' homes, or that ADT has otherwise blessed Vivint to work on ADT's behalf. Once Vivint's agents induces ADT customers to believe that they have an existing business relationship with ADT, Vivint's agents lead customers to sign Vivint contracts and install Vivint alarm systems, misleading ADT customers to believe that they are receiving new ADT equipment from ADT, an ADT affiliate, or an ADT successor, or that Vivint is assuming the ADT account, or that the customer has no choice but to permit the transaction to go forward if he or she wishes to continue to have operational alarm-monitoring services. . . . Vivint's intentional and unjustifiable interference with ADT's business relationships have caused ADT to suffer irreparable harm and damages in the form of lost goodwill and lost profits.

ECF No. 22, First Am. Compl. at ¶¶ 86, 89. Plaintiffs allege more than just damages from the alleged "buy out" scheme and failure to remit payment. Indeed, Plaintiffs also allege that they suffered damages allegedly caused by Defendants' sales representatives ostensibly tricking Plaintiffs' customers into believing that Defendants' sales representatives, amongst other things, were affiliated with Plaintiffs and/or working at Plaintiffs' direction. Accordingly, the Court finds that Defendants' argument regarding the alleged "buy outs" misses the mark. And, as such, the Court finds that Plaintiffs have indeed pled damages for Defendants' alleged interference with existing business relationships.[1]

---

[1] Defendants also argue that "ADT has also failed to plead loss of goodwill as a cognizable basis for damages with respect to a customer's existing contract because, akin to trade slander, such damages do not necessarily flow from a customer's termination of an existing contract.

## B. Defendants' Argument Concerning Plaintiffs' Prospective Contracts Fails

Finally, Defendants put forth a confusing and commingled argument that appears to suggest that Plaintiffs are not entitled to damages for future loss of revenue or profits because Plaintiffs' allegations concerning Defendants' alleged interference with Plaintiffs' prospective business relationships are too speculative. ECF No. 24 at p. 10. This argument fails.

As previously discussed, under Florida law, "[t]he elements of tortious interference with a business relationship are '(1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship.'" *Sentry Data Sys., Inc. v. CVS Health*, 361 F. Supp. 3d 1279, 1295 (S.D. Fla. 2018) (quoting *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1279 (11th Cir. 2015)). "As for the first element—the existence of a business relationship—the Supreme Court of Florida has explained that the plaintiff need not allege the existence of an enforceable contract and that the plaintiff can prevail 'if the jury finds that an understanding between the parties would have been completed had the defendant not interfered.'" *Duty Free Americas, Inc.*, 797 F.3d at 1279–80 (quoting *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 814 (Fla. 1994) quoting *Landry v. Hornstein*, 462 So.2d 844, 846 (Fla. 3d DCA 1985)). Thus, "[a]s a general rule, an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Gov't Emps. Ins. Co. v. AFO Imaging, Inc.*, No. 8:20-CV-2419-VMC-CPT, 2021 WL 2825949, at *3 (M.D. Fla. July 7, 2021) (quoting *Bell v. Tampa Bay Downs, Inc.*, No. 8:10-cv-2835-JSM-TBM, 2011 WL 6718266, at *1 (M.D. Fla. Dec. 21, 2011) (citation omitted)). "A [tortious interference with a business relationship] claim may be asserted concerning 'present or prospective customers but no cause of action exists for tortious interference with a business's relationship to the community at large.'" *Drenberg v. Focus! . . . On Surety, LLC*, No. 6:13-CV-1351-ORL-37, 2013 WL 6768667, at *3 (M.D. Fla. Dec. 20,

---

ADT must plead such damage with particularity. . . . ADT has not pleaded loss of goodwill in accordance with Fed. R. Civ. P. 9(g)[.]" Because the Court has already determined that Plaintiffs are not required to plead special damages "with particularity", it will not consider Defendants' particularity argument with respect to Plaintiffs' claim for tortious interference with advantageous business relationships.

2013) (quoting *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 814–15 (Fla. 1994)). "At the pleading stage, it is not necessary to name the specific customers at issue so long as there are sufficient allegations concerning a business relationship that affords the claimant 'existing or prospective legal or contractual rights.'" *Id.* (quoting *Ethan Allen, Inc.*, 647 So. 2d at 814).

Here, Plaintiffs have alleged that "absent Vivint's improper interference, it is not uncommon for a customer with two years left on his or her ADT contract to remain a loyal and paying customer to ADT for many years beyond the remaining two-year term." ECF No. 22, First Am. Compl. at ¶88. These allegations, taken as true, are sufficient to allege that Defendants interfered with Plaintiffs' prospective business relationships with its current customers. *See Sentry Data Sys., Inc.*, 361 F. Supp. 3d 1279, 1295 (S.D. Fla. 2018) ("Sentry alleges that it had valid exclusive contracts with its customers, that CVS knew about these contracts, and that CVS intentionally and unjustifiably interfered with these contracts using Sentry's trade secrets and confidential information to coerce Sentry's customers to breach their existing contracts or fail to renew expiring contracts. Sentry further alleges that certain business relationships which were in the negotiation process were stalled or prevented from being finalized based on CVS's interference. Taking these allegations as true, Plaintiff has adequately pleaded its tortious interference claims.") (internal citations omitted). It may be the case that Plaintiffs will not adduce sufficient evidence to support this claim for purposes of summary judgment or trial; however, at the motion to dismiss stage, the Court finds that Plaintiffs have stated a plausible claim.

Accordingly, for the reasons discussed above, it is hereby **ORDERED and ADJUDGED** that the Motion to Dismiss filed by Defendants Vivint Smart Home, Inc. f/k/a Mosaic Acquisition Corp. and Legacy Vivint Smart Home, Inc. f/k/a Vivint Smart Home, Inc. (ECF No. 24) is **DENIED**. Defendants Vivint Smart Home, Inc. f/k/a Mosaic Acquisition Corp. and Legacy Vivint Smart Home, Inc. f/k/a Vivint Smart Home, Inc. are directed to file an answer to the complaint **within ten (10) days of the date of this Order**. No extensions of time will be permitted.

**DONE and ORDERED** in Chambers at Miami, Florida this 30th day of September 2021.

*Marcia G. Cooke*
MARCIA G. COOKE
United States District Judge

Copies furnished to:

*Jonathan Goodman, U.S. Magistrate Judge*
*Counsel of record*