**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:20-cv-23391-GOODMAN
[CONSENT CASE]

ADT LLC, *et al*.,

      Plaintiffs,

v.

VIVINT SMART HOME, INC., *et al*.,

      Defendants.

_____/

## DEFENDANTS' REPLY IN SUPPORT OF MOTION IN *LIMINE*

I.      **Issue No. 1**: ADT's "Non-Hearsay" Purposes for the Out-of-Court Customer Complaints Require Assuming the Truth of the Matter Asserted in the Complaints.

In at least three prior cases, this Court rejected ADT's attempt to introduce the Out-of-Court Customer Complaints to prove deceptive sales practices against those customers, as inadmissible and unreliable hearsay not subject to any enumerated exception. (Motion at fn. 3.) ADT no longer disputes that the Customer Complaints are inadmissible if offered for the truth of the "complaints," and abandons its thrice-rejected arguments to apply any hearsay exceptions.

ADT now insists that it intends to offer the Customer Complaints for only "non-hearsay purposes." (Opp. at 3.) It proceeds to promptly invalidate these "purposes" by equating the Customer Complaints with "deceptive sales practices" committed by Vivint, i.e., the truth and validity of the "complaints." As explained below, each of ADT's "non-hearsay" roads inevitably lead to the same, singular place and "purpose": evidence of a customer call or report = deceptive sales conduct = actual damages claimed by ADT. The Customer Complaints should be excluded because ADT relies on the truth of these "complaints" at every turn.

A.      **Vivint's records as evidence of "notice and knowledge."**

ADT does not seek to admit the Customer Complaints to show Vivint's notice and knowledge of its **receipt** of Customer Complaints, but rather to show "evidence of Vivint's notice and knowledge **of deceptive sales practices[.]**" (Opp. at 4 (emphasis added).) To equate "complaints" with actual "deceptive sales practices," the jury must presume the truth and validity of each inadmissible hearsay "complaint" as a "deceptive sales practice." Invoking "notice" does not change ADT's conceded purpose. *See, e.g., Moon v. Advanced Med. Optics, Inc.*, 2010 WL 11500832, at *9 (N.D. Ga. Dec. 29, 2010) (database reports based on "subjective communications from lay persons" were inadmissible hearsay, and the plaintiffs "cannot avoid the hearsay rules by arguing that they seek to introduce the [database] entries and reports to show notice—Plaintiffs

necessarily are seeking to introduce the [database] entries and reports to show the truth of the matters contained in those documents").

Indeed, Vivint's mere notice or knowledge of the receipt of customer calls have no probative value if ADT cannot tell the jury these calls alleged deceptive conduct **and** that those reports were valid. ADT confirms this singular purpose. It claims that Vivint's records show the receipt of "more than 75,000 complaints **about the conduct of its sales representatives**" and will argue that Vivint has failed in sufficient "deterrence" or "punishment" of deceptive sales practices, based on its "extensive knowledge of the **magnitude of this problem**[.]" (Opp. at 4, attaching a purported "Vivint spreadsheet collecting customer complaints" as Ex. A (emphasis added).)

ADT cannot presume the existence of a "problem," much less of a certain "magnitude," without offering these "complaints" as actual instances of deceptive conduct. ADT further intends to mischaracterize **all** customer feedback as "complaints about the conduct of its sales representatives." (Opp. at 4.) This is false. Vivint's "spreadsheet" includes all manner of customer feedback,[1] including calls to compliment Vivint[2] and complaints **against ADT**.[3] Yet, based on its summary mischaracterization of inadmissible hearsay, ADT intends to seek damages for customers its purportedly lost to Vivint as a result of these "complaints." (*See* Ex. N to Motion,

---

[1] (*See* Ex. B to Opp., Vivint Rule 30(b)(6) Dep. (K. Hansen) at 31:14-21, explaining that Vivint26660 (Ex. A to Opp.) is "a download of all customer feedback records from Vivint's Salesforce files for a given time period . . .and it's not always a complaint.")

[2] (*See, e.g.,* Ex. A to Opp. at 1, "[Customer] just wanted to say thank you for all and for the service of Vivint!!!"; at 4, "Customer is very pleased with the system, she loves the equipment and is very happy that it works so well!!! . . She was considering going with ADT but changed her mind because they cannot match the level of technology and service that we have.")

[3] (*Id*. at 57, "[Customer] states that ADT Reps are out in his neighborhood slamming Vivint Accounts. Several times the same rep has come to his home & told him that we are changing Company names".)

ADT 2nd Suppl. Discl. at 5, disclosing intent to seek "lost account damages" based on "totality of the evidence" including "records produced by Vivint regarding consumer complaints.")

No authority permits inadmissible hearsay to establish the fact of unlawful conduct and actual damages. The parties' 2017 Lawsuit and the *Alder* case affirmed that Customer Complaints could not come in for their truth (Motion at fn. 3), and neither court endorsed the purported use of "notice" or "knowledge" to circumvent these holdings, as ADT intends here. (*See* Ex. D to Opp., Judge Middlebrooks noting, at most, that "in the event" ADT attempts to admit the Customer Complaints for "a non-hearsay purpose such as notice, any objection shall be dealt with at trial"; Ex. E to Opp., Judge Rosenberg summarily adopting magistrate's recommendation, which recommendation was limited to evidence "relevant to Alder's knowledge/notice **of complaints** by these ADT customers . . .to the extent [the complaints are] offered solely to establish notice/knowledge (and **not** for the truth of the matters asserted)[.]") (emphasis added).) ADT did not attach Magistrate Reinhart's critical clarification in this regard. (*See* **Ex. A** hereto at 5.)

B.    **Vivint records as non-hearsay "party admissions."**

Vivint's documentation of customers' inadmissible hearsay allegations do not qualify as "party admissions" under Fed. R. Evid. 801(d)(2). Vivint customer service employees merely receive and document what a customer claims a Vivint sales representative said. As such, these records cannot "manifest[] that [Vivint] adopted or believed to be true" a third-party customer's hearsay allegations because Vivint customer service was not present at the interaction and has no personal knowledge or authority to adopt a binding admission on behalf of Vivint. *See* Fed. R. Evid. 801(d)(2)(B); *see, e.g., Gracias v. DeKalb Cnty. Bd. of Educ.*, 2005 WL 8158045, at n. 17 (N.D. Ala. July 7, 2005) (out-of-court statement offered for the truth that it was actually uttered was inadmissible as a non-hearsay party admission; witness "[could] do nothing more than repeat

statements made to him that purported to report statements made earlier by [the party]. Again, this is hearsay and not an admission by a party. If [the witness] himself had heard [the party] make such statements, the situation would be different"). Vivint's records attest to nothing more than an outsider customer's inadmissible hearsay, or Vivint's proffered resolutions based on that inadmissible hearsay. These are not adopted "admissions."

### C.   ADT records as evidence of Vivint's "intent" by its "failure to investigate."

ADT next intends to offer its own records of Customer Complaints as evidence of Vivint's failure to substantiate these "complaints" **on ADT's behalf**, and this purported failure shows that Vivint "intends for its sales representatives to engage in deceptive sales practices." (Opp. at 6-8.) First and foremost, in order to show that Vivint "intended" to condone these "deceptive sales practices," ADT again necessarily offers the Customer Complaints for the truth of the customer allegations asserted therein—that there were "deceptive sales practices" to condone.

Second, ADT's burden to develop its evidence into an admissible format for trial was not shifted to Vivint by ADT's mere disclosure of these materials. ADT cites no authority for this novel proposition. As demonstrated in the Motion, ADT's Customer Complaints spreadsheet (and any underlying materials) are riddled with inconsistencies and inherent unreliability. Vivint was under no obligation to substantiate ADT's inadmissible hearsay evidence or risk nullifying the protection of the Rules of Evidence. Where the Customer Complaints cannot be taken for their truth, ADT cannot argue that Vivint's "failure" to take unspecified action on allegations of unsubstantiated conduct is evidence of its "intent" to commit deceptive sales practices.[4]

---

[4] ADT further misstates Vivint's testimony in this regard. Mr. Hansen testified only that he **_personally_** did not "investigate" ADT's spreadsheet, and could not recall specific action or inaction that Vivint's compliance investigation team may have otherwise taken. (Ex. B to Opp. at 9:16-25; 11:16-22.)

**D.      Vivint and ADT records as evidence of "actual confusion."**

ADT makes the unremarkable point that evidence of "actual confusion" is relevant under the Lanham Act. (Opp. at 8-9 (citing *Wreal, LLC v. Amazon.com, Inc*., 38 F.4th 114, 137 (11th Cir. 2022) (having no mention of the word "hearsay")).) Inadmissible hearsay is not overcome by (the alleged) relevance of the evidence. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 123 (2d Cir. 2001) (affirming exclusion of testimony relaying two anecdotal instances of actual confusion because it was inadmissible hearsay). That ADT intends to offer the Customer Complaints as evidence of actual confusion only underscores its intent to impermissibly offer this evidence for the truth of the matter asserted, that is, that the customers were actually confused as a result of what they allege a Vivint sales representative told them.

**E.      ADT records as evidence of the "number of ADT customers harmed."**

ADT's intent to offer the Customer Complaints to show the "number of ADT customers **harmed**" (Opp. at 9 (emphasis added)) again relies on an inadmissible presumption of the truth of the customer's allegation that a Vivint salesperson made a statement or omission, and that statement or omission "harmed" ADT through the loss of that customer.

ADT's solution is to simply redact the content of each complaint and proceed directly to showing the jury a list of customer names as victims of a deceptive sales practice. (Opp. at 9.) Based on this (inadmissible and unsubstantiated) presumption of liability, ADT then purports to identify which of those customers are no longer with ADT, and tallies those customers as "Total Known Lost Accounts" as a "result of Vivint's conduct[]" for purposes of computing its "Lost Account Damages." (*See* Ex. P to Opp. at 2-3.) ADT has not elicited any **admissible** testimony from those non-testifying customers as to whether they were a victim of a deceptive sales practice or if that was the reason they cancelled. Plainly, ADT must prove liability and causation for a lost

customer before it can claim damages for that customer. *See Optimum Technologies, Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1252 (11th Cir.2007) ("To recover actual damages, PODS "was required to establish that [U–Haul's] Lanham Act violations proximately caused it to suffer monetary damages." ). It has no such evidence absent reliance on the inadmissible hearsay content of the Customer Complaints, regardless of whether it intends to admit that content or to give the jury a list of names presuming that content.

The *Alder* ruling ADT attaches does not support its position. Judge Rosenberg excluded as "inadmissible hearsay" the "recorded telephone conversations between Plaintiffs and non-testifying customers and any summaries of those conversations[.]" (Ex. G to Opp. at 3.) That same order rejected ADT's argument that this evidence was admissible to "show numerosity of complaints to prove damages." (*Id*.) ADT claims that the magistrate subsequently allowed introduction of its spreadsheet with the substance of the complaints redacted, but cites no ruling or discussion in this regard that would provide any guidance to this Court. (Opp. at 10.)

In any event, in this case ADT confirms its intent to use "numerosity" of Customer Complaints to seek actual damages for those "complaints" in which it "lost" an account, without offering admissible evidence as to the actual reason that customer left. The cited *Alder* decision did not endorse this purpose, nor did Judge Middlebrooks in the 2017 Lawsuit. *ADT LLC v. Vivint, Inc.*, 2017 WL 11632866, *4 (S.D. Fla. Dec. 8, 2017) (excluding ADT's Customer Complaints spreadsheet on the grounds that "any documents that purport to summarize any customer phone calls are inadmissible hearsay . . . This includes the spreadsheet and corresponding summary.").

Because ADT has not identified admissible evidence other than sworn testimony of select ADT customers to prove Vivint's alleged deceptive sales practices (and only as to those customers), sworn testimony remains the only admissible means to prove such conduct. ADT

attempts to fault Vivint for its own inability to garner its desired number of trial depositions. (Opp. at 11.) To the contrary, ADT moved the Court to allow additional depositions and expressly requested leave to take a total of 15. (ECF 77 at 8-9 (requesting the Court grant either live remote trial testimony or 15 customer depositions).) Vivint did not oppose this Motion. The Court mooted the motion after it amended the scheduling order, and Vivint subsequently **stipulated** to ADT's requested number of customer depositions. (ECF 82 at 5.)

### F. ADT's response underscores the unreliability of the Customer Complaints.

The Motion demonstrates the inherent unreliability of the Customer Complaints to show that no hearsay exception applies, based on the undisputed circumstances of how these complaints are received, prepared, and generated. (Motion at 5-11.) Having unsuccessfully argued to apply hearsay exceptions in prior cases, ADT now tries to ignore the dispositive hearsay issue and frame the truth of the outsider customer allegations as an "authenticity" and "credibility" issue. (Opp. at 11.) Vivint does not challenge the "authenticity" of the parties' account notes documenting Customer Complaints. Nor can there be a "credibility" issue for customer witnesses that do not even testify. The dispositive issue is that there is no reliable, admissible means for the jury to verify the accuracy of a customer's allegations based solely on hearsay materials.

Whether due to its inability or unwillingness to locate and develop witness testimony, ADT purports to flip its burden to Vivint to **disprove** its inadmissible hearsay allegations. (Opp. at 12-13.) ADT is the proponent of this evidence. As stated above, it is not Vivint's obligation to package ADT's facially unreliable and unsubstantiated evidence into an admissible format.

Next, the Motion cites a handful of non-exhaustive examples that personify the inherent unreliability built into the structure of the Customer Complaints. Vivint did not purport to disprove every Customer Complaint. Nor is Vivint required, or even able, to disprove inadmissible hearsay.

ADT's efforts to rehabilitate (some) of the cited examples illustrate this point. (Opp. at 14-15, attempting to offer contrary explanations or inferences from customer call transcripts.) ADT engages in a self-defeating exercise that merely exposes the nuance of each customer interaction, the fact that customers often contradict themselves, and the ambiguity of what they were told, what they understood or did not understand, and unspoken motivations that can inform their testimony. The jury cannot assess the "credibility" of the parties' respective customer account notes absent testimony. This is precisely why customers must testify subject to cross examination.

In sum, because each purpose proffered by ADT necessarily reverts back to inadmissible hearsay, the Customer Complaints should be excluded.

## II.   <u>Issue No. 2</u>: ADT's Use of the External Matters to Prove "Intent" Requires Assuming the Truth of Unproven, Inherently Dissimilar, and Unfairly Prejudicial Conduct.

As a threshold issue, ADT does not address, much less dispute, the inadmissibility of its customer depositions, materials, and settlement in the parties' 2017 Lawsuit because all such materials were subject to a full release by ADT. (Motion at 17-18.) This release operates to exclude any evidence of the 2017 Lawsuit independent of the applicable evidentiary rules.

ADT confirms its intent to offer the remaining "Agency Complaints" and "Other Proceedings" for the same improper reasons as the Customer Complaints: to attribute unproven conduct to Vivint as fact, and then to seek damages for itself based on a presumption of liability in external matters that did not concern ADT or any ADT customer at issue in this lawsuit. (Opp. at 19.) ADT's attempts to obfuscate this singular purpose are without merit.

### A.   External matters as evidence of "knowledge" and "party admissions."

ADT cannot invoke the non-hearsay purposes of "notice," "knowledge," or "admissions" to admit evidence that will necessarily be offered for the truth of the allegations raised in the external matters, which (according to ADT) is "the **fact** that [Vivint] sales representatives **were**

**engaging** in deceptive sales practices." (Opp. at 17 (emphasis added).) To accept this assertion, the jury must assume inadmissible hearsay as to Vivint's liability for unspecified customers in unrelated matters. It cannot do so with respect to unadjudicated allegations and contested litigation.

     **B.**     **External matters as "other bad act" evidence under Rule 404(b).**

     ADT's reliance on the Rule 404(b)(2) exceptions to show Vivint's "intent" and "absence of mistake" is misplaced. ADT intends to offer this evidence to argue the fact of Vivint's "pervasive misconduct in the market" and "longstanding pattern of misconduct." (Opp. at 18.) The problem is that the external matters establish neither; they are nothing more than contested, unadjudicated allegations. It is far outside the province of the jury's finite time and resources to undertake mini-trials as to the validity of allegations having nothing to do with ADT customers. These external allegations are also necessarily dissimilar to the experience of any given ADT customer with a given Vivint sales representative on a given date or place. That is simply the nature of door-to-door conduct at issue. It varies in each instance. ADT has not even attempted to show substantial similarity of these matters. *See United States v. Liuzzo*, 608 F. Supp. 1234, 1236 (S.D. Fla. 1985) ("While it is true that the 'similar acts' evidence need not be identical to the act charged . . . there must be sufficient similarity to insure its probative value will outweigh the prejudice that will inevitably be suffered by the Defendant by its introduction."); *Moon v. Advanced Med. Optics, Inc.*, 2010 WL 11500832, at *5 (N.D. Ga. Dec. 29, 2010) (excluding other lawsuits, claims or incidents against defendant attributed to the same product where showed only "cursory evidence" that failed to meet its burden to show substantial similarity of prior incidents). ADT's conclusory refrain that these external matters establish Vivint's "deceptive conduct" is insufficient.

**C.     External matters are unfairly prejudicial under Fed. R. Evid. 403.**

The Rule 403 implications of allowing ADT to offer unadjudicated external matters are plenary, starting with the untold number of mini-trials (not only as to each matter, but as to each customer or allegation in each matter) that will result in response to ADT's intent to mischaracterize these matters as established deceptive conduct. Vivint has neither the trial time nor resources to respond to this highly prejudicial implication. ADT seeks to exploit the resulting confusion and improper inferences certain to infect the jury. It insists that admission is critical to its punitive damages, premised on the expectation that the jury will assume the validity of unproven matters, i.e. that "Vivint has defrauded customers throughout the United States for many years." (Opp. at 19.) Allowing ADT to frame the trial around Vivint as a "bad" company because it has been involved in other proceedings has no probative value as to whether a particular ADT customer was misled, whether ADT was harmed as a result, and/or whether Vivint's alleged conduct in this case justifies punitive damages.

**III.   <u>Issue No. 3</u>: Vivint's Years-Old Competitor Lawsuits Are Not Relevant to ADT's Burden to Prove Deceptive Sales Practices Were Committed Against Its Customers and Any Resulting Damages.**

ADT seeks to shirk its burden to establish Vivint's alleged conduct against its customers, and its burden to prove causation and damages (if any) pertinent to those customers, by referencing Vivint's "admissions" in years-old litigation pleadings. There is no contention that these matters had anything even remotely to do with ADT or its customers. Undeterred, ADT first identifies statements made by a former Vivint employee that Vivint, in 2011, termed "false or misleading statements" made to Vivint customers as a "slam." (Opp. at 21.) Now, a decade later, and following untold turnover of employees and processes, Vivint testified in this case that "slam" may not be so limited: "I'm not sure the word 'slam' would mean the same thing to every customer service

rep." (Ex. B. to Opp. at 53:5-7.) Even if Vivint were "bound" to a decade-old description, this statement cannot be the "admission" ADT presumes. Vivint employees merely "cod[e] the allegation and not necessarily the conclusion." (*Id*. at 55:8-10.) Admission of outdated, attenuated pleadings for this confusing purpose, and irrelevant to whether or not any ADT customer complaint is valid, violates Rule 402 and 403.

Second, ADT makes an even larger leap in seeking to establish its computation of **actual** damages in this case based on Vivint's prior **legal argument** in an (unsuccessful) motion for preliminary injunction suggesting that complaints are underreported. (Opp. at 22.) ADT uses this "admission" as evidentiary foundation for its mathematical formula to multiply its "lost accounts" comprised of the hearsay "complaints." ADT's so-called extrapolation theory is not established by an "admission" by an opposing party in a decade-old pleading. This theory requires admissible expert survey testimony. ADT attempted to proffer expert testimony to support this "tip of the iceberg" theory in the 2017 Lawsuit, but was rebuffed based on the expert's failure to do the requisite survey, instead relying on ADT's inadmissible hearsay. (*See* **Ex. B** hereto at 3-6, order excluding ADT's "multiplier" expert.) Where ADT's prior expert could not support this theory with adequate methodology to survive muster under *Daubert*, ADT certainly cannot meet the admissibility threshold by reference to a footnote in a decade-old motion pleading.

In sum, for the purposes identified by ADT, admission of the Competitor Lawsuits would unfairly prejudice Vivint not only by painting it as a litigious character, but by improperly instructing the jury to attribute both the fact of unlawful conduct and extrapolate damages that, under applicable law, require expert survey testimony ADT does not proffer. *See, e.g., Chao v. Tyson Foods, Inc.*, 2009 WL 10687776, at *3 (N.D. Ala. Jan. 17, 2009) (distinguishing between party admissions "to prove facts in each case" as opposed to "legal conclusions" to be drawn by

the court; "It would be inappropriate for [defendant] to offer legal materials to the jury that attempt to effectively preempt a decision the jury must make or to preempt this Court's duty to instruct the jury on the applicable law.").

## IV.   <u>Issue No. 4</u>: ADT's Damages Indisputably Rely on Inadmissible Hearsay.

ADT's formula for its "lost account damages" was inexplicably and untimely withheld until the middle of ADT's Rule 30(b)(6) deposition, unduly limiting Vivint's ability to conduct discovery to a single deposition without any ability to adequately prepare, challenge or probe the "formula." ADT elects to expend the entirety of its response to Issue No. 4 reciting the dates of its various unrelated damages disclosures, none of which disclosed the "formula." (Opp. at 23.)

ADT offers no rebuttal to the dispositive grounds for exclusion of its damages, which rely on the inadmissible Customer Complaints, External Matters, and Vivint's Competitor Lawsuits. ADT instead defers to the *Daubert* motions briefing. (*Id.*) What ADT does acknowledge throughout its Opposition is that it has no intention of offering any admissible evidence to prove any of these out-of-court, unproven allegations, other than the out-of-court, unproven allegations themselves. ADT's damages theories depend on its ability to tell the jury that it can presume Vivint's liability in each of thousands of unique customer interactions based on ADT's mischaracterization of what constitutes a deceptive sale practice "complaint," and the unsubstantiated validity of such "complaints" from non-testifying, outsider customers and external matters involving outside litigants. ADT does not address any of the authority cited in the Motion that summarily rejects its attenuated theories of "damages." Thus, for the reasons stated in the Motion, ADT's damages computations—each of which is based on inadmissible hearsay and none of which purport to calculate the alleged loss specific to its testifying customers (as Vivint has done in support of its Counterclaim)—should be excluded.

Respectfully submitted,


/s/Joshua R. Brown
Michael N. Kreitzer
Florida Bar No. 705561
kreitzerm@gtlaw.com
GREENBERG TRAURIG, P.A.
333 S.E. 2nd Ave., Suite 4400
Miami, Florida 33131
Telephone: 305.579.0500

-and-

Gregory W. Herbert
Florida Bar No. 0111510
herbertg@gtlaw.com
Joshua R. Brown
Florida Bar No. 826391
brownjr@gtlaw.com
GREENBERG TRAURIG, P.A.
450 S. Orange Ave., Suite 650
Orlando, Florida 32801
Telephone: 407.420.1100

-and-

Matthew A. Steward (*pro hac vice*)
mas@clydesnow.com
Shannon K. Zollinger (*pro hac vice*)
skz@clydesnow.com
CLYDE SNOW & SESSIONS
201 S. Main Street, Suite 1300
Salt Lake City, Utah 84111
Telephone: 801.322.2516

*Counsel for Defendants Vivint Smart Home,
Inc. and Legacy Vivint Smart Home, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on February 3, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of filing to all counsel of record.

/s/Joshua R. Brown